IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| ICON HEALTH & FITNESS, INC.,<br><br>                       Plaintiff,<br><br>  vs.<br><br>THE NAUTILUS GROUP, INC., f/k/a DIRECT FOCUS, INC., and NAUTILUS/SCHWINN FITNESS GROUP, INC.<br><br>                       Defendants. | ORDER & MEMORANDUM DECISION<br><br>1:02CV00109TC |

       This matter is before the court on various motions in limine filed by both Plaintiff Icon Health & Fitness, Inc. ("Icon"), and Defendant the Nautilus Group, Inc. ("Nautilus"). A hearing was held on these motions on August 24, 2005. The court now enters the following Order.

**Icon's Motions in Limine Re: Multiple Issues (Dkt. 344)**:

Icon has submitted this motion in limine addressing the following issues:

    a.    <u>Nautilus should be excluded from arguing that the manufactured with patented technology statement does not constitute false advertising</u>.

Icon argues that Nautilus should be prohibited from arguing that its "manufactured with patented technology statement" does not constitute false advertising under 15 U.S.C. § 1125(a) because it is contrary to the court's December 22, 2004 Order on cross-motions for summary judgment. Icon contends that the court's December 22, 2004 Order granted Icon's motion as

1

applied to this statement and found that it constitutes false advertising. Icon specifically seeks to preclude Nautilus from arguing that the court merely found that the statement was literally false, not that it constitutes false advertising.

Having fully reviewed the parties' arguments on this motion and reviewed the court's December 22, 2004 Order, the court notes that the Order only specifically found that the "manufactured with patented technology" statement was literally false. The parties have agreed that the commerce element of false advertising has been met. There remains a dispute regarding the remainder of the elements required to prove false advertising. Accordingly, Nautilus is permitted to argue to the jury that the "manufactured with patented technology statement" does not constitute false advertising, but may not argue that the statement is not false.

   b. <u>Nautilus' documents, things, and witnesses should be excluded as untimely</u>

Icon argues that the below-described documents and things were not timely produced and disclosed pursuant to Federal Rule of Civil Procedure 26 and that Nautilus is thereby precluded from using them at trial unless it can prove that delay was justified or harmless. Fed. R. Civ. P. 37 (c). <u>Woodworker's Supply, Inc. v. Principal Mut. Life. Ins. Co.</u>, 170 F.3d 985, 993 (10th Cir. 1999).

| 1 | Memorandum entitled: "Importance of 'White Space' in Advertising" |
|---|---|
| 2 | Article– Nothing is Something: White Space, a Figure of Commercial Rhetoric |
| 3 | Article– Five Principles That Online Can Learn From Offline Marketing |
| 4 | National Sporting Goods Market Report– The Sporting Goods Market in 2004 |
| 5 | Ryan Beck & Co. Valuation Report of The Nautilus Group, Inc. |
| 6 | Article from www.wiu.edu -- Advertising Layout Strategy |
| 7 | Article from www.lanecc.edu-- Advertising |

| 8 | Article from www.heist.co.uk – Effective Press Advertising |
| --- | --- |
| 9 | Article from http://echo.louisville.edu website – In Praise of White Space: White Space is Not Just the Space Around a Picture or Word, It Can Be The Space Around a Brand Itself |
| 10 | Ibbotson Associates Cost of Capital – 2004 Yearbook, SIC Code 3949 |
| 11 | Bowflex Machine |
| 12 | Trimline Treadmill |
| 13 | Schwinn Treadmill |
| 14 | Nautilus Treadmill |
| 15 | Compilation of pages from www.bowflex.com – "Bowflex Machine Details" |
| 16 | Compilation of pages from www.directfocus.inc.com – "Product Lines" |

At the August 24, 2005 hearing on this motion, Nautilus stipulated that it would not seek admission of the various treadmills at trial and also stipulated that if Icon informed Nautilus which model of Bowflex machine it possesses, Nautilus will only bring that model to trial. Nautilus also agreed to provide a copy of the relevant portions of Ibbotson Associates Cost of Capital – 2004 Yearbook, SIC Code 3949, by Monday August 29, 2005.  The parties agreed to allow further depositions of the parties' damages experts, Lance Gunderson and Cate Elsten, which renders this motion moot as it applies to the remainder of the documents identified above.

To the extent Icon's motion seeks to exclude previously unidentified witnesses, it has been withdrawn.  To the extent that Icon seeks to exclude documents from other litigation between the parties as identified in its motion, its motion is moot pursuant to Nautilus' stipulation that such documents will not be offered at trial.

  c. <u>Nautilus' offers to compromise should be excluded</u>.

Icon argues that, under Federal Rules of Evidence 403 and 408, any evidence of Nautilus'

offer to compromise should be excluded.  Icon specifically seeks exclusion of Nautilus' offer to compensate Icon for a trademark violation that was published in approximately 119,000 catalogues.  Nautilus argues that it intends to offer this evidence to demonstrate good faith and that this use is not within the contemplation of Rule 408.

>Federal Rule of Evidence 408 provides:
>
>Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claims which was disputed as to either validity or amount, it not admissible to prove liability for or invalidity of the claim or its amount.  Evidence of conduct or statements made in compromise negotiations is likewise not admissible. . . .  <u>This rule also does not require exclusion when the evidence is offered for another purpose</u>, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

Fed. R. Evid. 408 (emphasis added).  When introduced for purposes other than to prove liability courts frequently admit evidence of offers to settle.  See <u>Towerridge, Inc. v. T.A.O., Inc.</u>, 111 F.3d 758, 770 (10th Cir. 1997) (evidence of offer to compromise admissible to demonstrate good faith).  The evidence Icon seeks to exclude is offered by Nautilus to prove good faith and is not excluded by Rule 408.  Additionally, Rule 408 is generally not implicated by the introduction of evidence of an offer to settle by the offeror.  <u>See</u> <u>Crues v. K.F.C. Corp.</u>, 768 F.2d 230, 233-234 (8th Cir. 1985); <u>Morely-Murphy Co. v. Zenith Electronics Corp.</u>, 910 F.Supp. 450, 456 (W.D. Wisc. 1996), <u>rev'd on other grounds</u>, 142 F.3d 373 (7th Cir. 1998).

Under Rule 403, evidence may be excluded if its probative value is exceeded by its prejudicial potential.  Here, while the offer to compromise is not, in and of itself, prejudicial, and is permitted under Rule 408, the introduction of the dollar amount offered by Nautilus to Icon in the proposed offer may have the effect of prejudicing the jury.  By telling the jury the amount

Nautilus thought would be appropriate to settle those claims of infringement, it may sway the jury into believing that the offer represents a reasonable calculation of damages.

Accordingly, Nautilus may introduce evidence of its offer to compromise the trademark infringement claims, but is prohibited from introducing the dollar amount offered because of its potential to prejudice the jury on the issue of damages.

**Nautilus' Motion in Limine to Exclude References to the Court's Summary Judgment Order of December 22, 2004 (Dkt. 357)**:

Nautilus argues that the court should exclude all references to its December 22, 2004 Order.  Specifically, Nautilus contends that the Order is not relevant and that any probative value it may have is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury under Federal Rules of Evidence 401, 402 and 403.  Nautilus' primary concern is that the jury could easily be misled into believing that the statements by the court are findings of fact or law when not intended as such.

Having considered the parties' briefs and arguments on this issue, the court recognizes the potential for prejudice that comes with allowing use of this Order.  The use of the Order, however,  is also very probative of Natuilus' actions after being made aware of the allegedly false statements.  Accordingly, with briefing from the parties, the court will craft a comprehensive and specific set of opening remarks informing the jury what this court has found and what is to be determined by them.   Additionally, if appropriate, the parties may use the Order in examinations of witnesses, subject to objection.

**Nautilus' Motion in Limine to Exclude Post-Discovery Valuations by Icon and to Preclude Argument To the Jury Regarding the False Marking Claim or, in the Alternative, for a Jury Instruction Defining "Offense" for False Marking Claim (Dkt. 360)**:

In this motion, Nautilus seeks to exclude post-discovery valuations of damages and also

to preclude argument to the jury regarding the false marking claims.

      d.      Post-Discovery Valuations

In its complaint Icon seeks $500 for "every false marking offense" under 35 U.S.C. § 292. Nautilus asserts that Icon failed to disclose information regarding its damages theory in response to a direct discovery request and that this precludes Icon from using this information at trial. Fed. R. Civ. P. 37(c)(1). Nautilus further asserts that Icon's damages expert, Lance E. Gunderson, failed to clarify the damages sought under § 292 in his expert report and without the information supporting his damages theory, Nautilus was unable to depose Mr. Gunderson on this issue.

At the August 24, 2005 hearing on this issue, the parties agreed to make Mr. Gunderson and Ms. Elsten, Nautilus' damages expert, available for further depositions. The court finds that these additional depositions, in conjunction with this Order, render this portion of this motion moot. At the upcoming depositions, the parties will be able to fully explore the calculation of damages issue with the two experts in light of the court's discussion on the definition of an "offense" in the context of the false marking statute.

      e.      "Offense" for False Marking

Nautilus argues that what constitutes an "offense" for a claim of false marking, the number of offenses committed, and the fine to be imposed, are questions of law to be decided by the court in its sound discretion. In the alternative, Nautilus argues that the jury should be instructed that under the false marking statute, "offense" should be defined as a single continuous act.

It is apparent from a review of case law that a jury may decide the questions of whether a

defendant has committed the act of false marking.  See Mainland Indus., Inc. v. Standal's Patents Ltd., 229 U.S.P.Q. 43, 46 (D.Or. 1985), aff'd 799 F.2d 746 (Fed. Cir. 1986), overruled in part on other grounds, A.C. Aukerman Co. v. R.L. Chaides Constr. Co., 960 F.2d 1020 (Fed. Cir. 1992).  It does not appear, however, that a jury has been asked to decide the number of offenses committed or the fine to be assessed.  These appear to be questions of law within the discretion of the district court.  D.O.C.C., Inc. v. Spintech, Inc., 36 U.S.P.Q.2d 1145, 1156-57 (S.D.N.Y. 1994) (treating "offense" and assessing damages as a matter of law); Sadlar-Cisar, Inc. v. Commercial Sales Network, Inc., 786 F. Supp. 1287, 1296 (N.D. Ohio 1991) (definition of "offense," number of offenses, assessment of liability treated as conclusions of law);   Mainland Indus., 229 U.S.P.Q. at 46 (determination of the amount of a fine within the district court's "discretion under 35 U.S.C. § 292(a) to assess a fine of not more than $500 for each offense"); Precision Dynamics Corp. v. American Hosp. Supply Corp., 241 F. Supp. 436, 447 (S.D. Cal. 1965) (amount of fine to be determined as a matter of law); London v. Everett H. Dunbar Corp., 179 F. 506, 508-09 (1st Cir. 1910) ("offense" defined as a matter of law).  Even in cases where the jury found a party guilty of false marking, it was the court that determined the number of offenses and the fine to be imposed.  See Mainland Indus., 229 U.S.P.Q. at 46.

      Accordingly, the court finds that the ultimate determination regarding what constitutes an "offense," the number of offenses of false marking, and the fine to be imposed, are questions of law within the discretion of the court.  Mainland Indus., 229 U.S.P.Q. at 46.  Recognizing, however, the difficulty in making this determination, and the lack of case law on the issue, the court intends to instruct the jury on the definition of an "offense" under 35 U.S.C. § 292 and seek an advisory determination on the number of offenses committed if the jury finds that Nautilus is

guilty of false marking.

In determining the number of "offenses" under 35 U.S.C. § 292, the general principle is that a "continuous advertisement over a period of time constitutes a single offense." D.O.C.C., 36 U.S.P.Q.2d at 1157; Sadlar-Cisar, 786 F. Supp. at 1296 ("continuous markings over a given time constitute a single offense."); Mainland Indus., 229 U.S.P.Q. at 46 (imposed one fine for three editions of an advertising brochure); London, 179 F. at 508 ("It can hardly have been the intent of Congress that penalties should accumulate as fast as a printing press or stamping machine might operate."). The court recognizes that "divergence of time and circumstances as to make one act of marking separable and distinct from other acts of marking" may be sufficient to constitute a separate "offense." London, 179 F. at 509.

Based upon the above and having reviewed the parties' briefs on this matter, the court proposes to instruct the jury as follows:

INSTRUCTION NO. ___

The false marking statute imposes liability on an offender for each separate false marking "offense." An "offense" is defined as "a single continuous act." Each advertisement falsely stating that something is patented when it is not patented is an instance of false marking under the statute. A continuous advertisement constitutes a single false marking offense regardless of how many times that advertisement was reprinted or re-broadcast. An advertisement may constitute a separate offense from other advertisements using the same language if that advertisement is distinct in time and circumstance.

Additionally, the verdict form will ask the jury to determine whether Nautilus is guilty of false marking and, if so, the number of offenses. On these issues, the court proposes that the verdict form read:

    1.    Please determine whether any of the following statements constitute false

marking. Write "yes" or "no" according to your unanimous decision:

[TABLE OF ACCUSED STATEMENTS]

If you found that Nautilus is guilty of false marking through the use of any of the above-quoted statements, please answer the next question.

2. For each statement that you have found constitutes false marking, please write down the number of offenses committed as defined for you in Instruction No. ___.

[TABLE OF ACCUSED STATEMENTS]

The jury will not know that its determination of this issue is merely advisory. The court intends to refer to the jury's advisory opinion on the number of offenses and tailor an appropriate fine if Nautilus is found to have committed false marking.

**Nautilus' Motion in Limine to Exclude Evidence of Third-Party Advertisements Under Rules 401, 402, and 403 (Dkt.362)**:

In this motion Nautilus seeks to preclude Icon from introducing any evidence of advertisements by third-parties which repeat the allegedly false statements at issue in Icon's false advertising claims. The basis of this argument is that the repetition of the allegedly false statements were neither produced or sponsored by Nautilus and are therefore irrelevant to Icon's claims of false advertisement by Nautilus. Fed. R. Evid. 401 - 403. Nautilus also asserts that the presentation of this evidence would prejudice Nautilus, cause confusion, and mislead the jury. Icon contends that the use of third-party advertisements is relevant under Rules 401, 402, and proper under Rule 403, because it serves as evidence of the likelihood of confusion that results from Nautilus' advertisements.

A claim of false advertising under the Lanham Act requires that a plaintiff prove that the

defendant made a false statement of fact in a commercial advertisement. 15 U.S.C. § 1125(a)(1)(B); Sally Beauty Co. v. Beautyco, Inc., 304 F.3d 964, 980 (10th Cir. 2002). Statements and advertising by third parties "cannot be construed as advertising" by Nautilus. New.Net, Inc. v. Lavasoft, 356 F. Supp.2d 1090, 1113 (C.D. Cal. 2004). Third-party advertisements are not probative of actual consumer confusion because the circumstances, intention, and understanding of the third-party advertisers is not known. See Spring-Mills, Inc. v. Ultracashmere House, Ltd., 532 F. Supp. 1203, 1218-19 (S.D.N.Y. 1982) rev'd on other grounds, 689 F.2d 1127 (2d Cir. 1982). Additionally, any probative value that these third-party advertisements may contain, is outweighed by the potential for prejudice. See Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc., 314 F.3d 48, 58 (2d Cir. 2002). Here, there is high potential that the jury may confuse the statements made by third parties with the statements actually made by Nautilus and may misperceive the extent to which Nautilus itself may have made the subject claims. [1]

**Nautilus' Motion in Limine to Exclude Damages Calculations for Sales that Occurred Outside the Limitations Period (Dkt. 374)**:

In this motion Nautilus seeks to exclude evidence of profits earned by Nautilus on sales that occurred before the three year statute of limitations period, which began on August 30, 1999.[2] Specifically, Nautilus contends that Icon has alleged a continuing wrong which allows

---

[1] This Order does not reach the issue of Dr. Belch's reliance on third-party advertisements in formulating his conclusions regarding the effect of Nautilus' advertising.

[2] The court arrives at this date by applying the most analogous state law statute of limitations to the date of filing. In this case, the most analogous statute of limitations is the three-year statute of limitations for fraud. Accordingly, calculating three years back from the date of filing indicates that the statute of limitations would have begun on August 30, 1999. This, however, is not a conclusive determination in that respect.

Icon only to recover those damages incurred within the limitations period (i.e., after August 30, 1999). See, e.g., Hoery v. United States, 324 F.3d 1220, 1222 (10th Cir. 2003) (for continuing torts, "plaintiff's recovery is limited by the statue of limitations to the two-year period dating back from when the plaintiff's complaint was filed.").

Because decision on this motion requires the court to answer questions similar to those currently under advisement on the issue of laches, this motion is taken under advisement pending disposition on the issue of laches.

**ORDER**

For the reasons set forth above and at the August 24, 2005 hearing on these motions, the court enters the following Order:

1. Icon's Motions in Limine regarding multiple issues (Dkt. 344) is GRANTED in part and DENIED in part .

2. Icon's Motion in Limine to exclude the testimony of Cate Elsten (Dkt. 346) is WITHDRAWN by stipulation of the parties pending Ms. Elsten's deposition.

3. Nautilus' Motion in Limine regarding the court's December 22, 2004 Order (Dkt. 357) is DENIED.

4. Nautilus' Motion in Limine regarding post-discovery valuations and the definition of "offense" (Dkt. 360) is GRANTED in part and DENIED in part.

5. Nautilus's Motion in Limine regarding third-party advertisements (Dkt. 362) is GRANTED.

6. Nautilus' Motion in Limine seeking to exclude the testimony of Lance E. Gunderson as untimely (Dkt. 364) is WITHDRAWN pursuant to the stipulation of the parties.

7. Nautilus' Motion in Limine regarding the alleged environmental impact of manufacture of Nautilus' power rods (Dkt. 366) is WITHDRAWN pursuant to the stipulation of the parties (Dkt. 384).

8. Nautilus' Motion in Limine to exclude damages calculations for sales that occurred outside the limitations period (Dkt. 374) is taken under advisement.

SO ORDERED this 31st day of August, 2005.

BY THE COURT:

*[signature: Tena Campbell]*

TENA CAMPBELL
United States District Judge